## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DEANNA R.,**[1]

      **Plaintiff,**

                             **Case No. 2:23-cv-1327**

   **v.**                       **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Deanna R. for Disability

Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff

appeals from the final decision of the Commissioner of Social Security denying that application.

After careful consideration of the entire record, including the entire administrative record, the

Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the

reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On March 11, 2021, Plaintiff filed her application for benefits, alleging that she has been

disabled since July 11, 2019. R. 100, 107, 207–10. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 114–17, 119–22. Plaintiff sought a *de novo* hearing before an administrative

law judge ("ALJ"). R. 128–29. ALJ Jack Russak held a hearing on March 1, 2022, at which

Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 34–76. In a

decision dated March 10, 2022, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act  from July 11, 2019, Plaintiff's alleged disability onset date,

through the date of that decision. R. 19–29. That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on January 9, 2023.

R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 26,

2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No.

15.[3] On June 14, 2024, the case was reassigned to the undersigned. ECF No. 16. The matter is

ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

3

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at \*4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at \*4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

5

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous

period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

between July 11, 2019, her alleged disability onset date, and the date of the decision. R. 21.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

degenerative disc disease of the cervical spine; herniated nucleus pulposus of the thoracic spine;

coccydynia; right shoulder supraspinatus tear; right knee meniscus tear; peripheral neuropathy of

the bilateral lower extremities; short bowel syndrome, status post colectomy; hypothyroidism

secondary to thyroidectomy; and obesity. R. 22. The ALJ also found that Plaintiff's arthritis of

the carpometacarpal ("CMC") joints of the thumbs was not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. R. 22–23.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to

various additional limitations. R. 24–28. The ALJ also found that this RFC permitted the

performance of Plaintiff's past relevant work as a pharmacy cashier as actually and generally

performed. R. 28–29. The ALJ therefore concluded that Plaintiff was not disabled within the

meaning of the Social Security Act from July 11, 2019, her alleged disability onset date, through

the date of the decision. R. 29.

Plaintiff disagrees with the ALJ's findings at step four and argues that the ALJ failed in his

duty to develop the record; she asks that the decision of the Commissioner be reversed and

remanded for further proceedings. *Memorandum of Law,* ECF No. 8; *Plaintiff's Reply*, ECF No.

14. The Commissioner takes the position that his decision should be affirmed in its entirety

because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 12.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Ronald Bagner, M.D.

On May 25, 2021, Plaintiff presented to Ronald Bagner, M.D., for a consultative examination. R. 407–09. Plaintiff reported limitation in her ability to lift, to raise her arms above her head, and to bend and stand; she has difficulty sleeping and taking a shower; lying down increases her pain; and she finds it difficult to do housework. R. 407. Upon physical examination, Dr. Bagner noted as follows:

> Vital Signs: Height 62 inches, weight 155 pounds. Pulse 78, respirations 16, and blood pressure 134/84. General Appearance: This is a 56-year-old female, who ambulates slowly with an intermittent right limp. She gets on and off the examining table with moderate difficulty. She gets dressed and undressed without assistance. She is not uncomfortable in seated position during the interview. She does not use a cane or crutches. *She can ambulate on her toes with moderate difficulty and she can ambulate on the heels.* Cervical: There is *normal flexion, extension is 0. Lateral rotation to the left and to the right is 0-30 degrees bilaterally.* Lateral flexion to the left and to the right is 0-15 degrees bilaterally. Pain on movement in the cervical region. *Biceps, triceps, and brachioradialis reflexes are 2+ bilaterally.[4] There is no sensory abnormality in the upper extremities.* Upper Extremities: *The left shoulder shows a normal range of movement. Pain on movement of the right shoulder, all movements of the right shoulder are done carefully and slowly. The right shoulder shows a normal range of movement.* The elbows, forearms, wrists, and fingers show a *normal range of movement. The patient can make a fist and can oppose the thumbs. The grips are rated as 4/5 bilaterally.* Back*: Pain on movement of the lower back, all movements of the lower back are done carefully and slowly. There is normal flexion, normal extension, normal lateral flexion to the left and to*

---

[4] " '2+' signifies normal deep tendon reflexes." *Caraballo v. Astrue*, No. 4:11-CV-00112, 2012 WL 983579, at *7 n.25 (M.D. Pa. Mar. 22, 2012) (citations omitted); *Guzman v. Comm'r of Soc. Sec.*, No. 1:17-CV-06590-NLH, 2018 WL 6522914, at *5 (D.N.J. Dec. 12, 2018) ("On examination, Plaintiff had cervical and paraspinal tenderness, but straight leg raising was negative, *deep tendon reflexes were 2+ (i.e., normal)*, motor strength was 5/5, and sensory functioning was intact.") (emphasis added).

*the right. There is no pain on straight leg raising. Knee and ankle reflexes are 2+ bilaterally. No atrophy to thigh or calf musculature. No motor or sensory abnormalities in the lower extremities, Lower Extremities: The hips show a normal range of movement. The left knee is stable, shows a normal range of movement. There is no effusion or localized tenderness. Pain on movement of the right knee and the right knee shows a normal range of movement.* No effusion. No localized tenderness. No instability to collateral or cruciate ligaments. *The ankles show a normal range of movement, pain on movement of the ankles.*

R. 407–08 (emphasis added). Dr. Bagner's impressions were: "1. Cervical sprain/strain.

2. Dorsal sprain. 3. Lumbosacral strain. 4. Fractured coccyx by history. 5. Contusion, right

shoulder. 6. Contusion, right knee." R. 408. He went on to note:

> The patient ambulates slowly with an intermittent right limp. She gets on and off the examining table with moderate difficulty. She gets dressed and undressed without assistance. She is not uncomfortable in seated position during the interview, She does not use a cane or crutches. *She can ambulate on the toes with moderate difficulty*, not on the heels [sic].[5] Pain on movement in the cervical region, all movements are done carefully and slowly, range of motion as noted. *Pain on movement of the right shoulder, all movements are done carefully and slowly. The right shoulder shows a normal range of movement.* The grips are as noted above. Pain on movement of the lower back, all movements of the lower back are done carefully and slowly, *normal range of movement.*
>
> Pain on movement of the right knee and the *right knee shows a normal range of movement*. Pain on movement of the ankles and the *ankles show a normal range of movement*. No evidence of acute inflammation. No swelling. No increased temperature. The reflexes are as noted.

R. 408–09 (emphasis added).

**B.    State Agency Reviewing Consultants**

Joseph Udomsaph, M.D., conducted an initial review of Plaintiff's medical record on

behalf of the state agency on June 28, 2021. R. 101–06. Dr. Udomsaph specifically considered

the medical evidence as it appeared in the record at that time, which included Dr. Bagner's

orthopedic consultative examination on May 25, 2021, which revealed, *inter alia*, that Plaintiff

---

[5] Elsewhere in his report, Dr. Bagner expressly found that Plaintiff "can ambulate on her toes with moderate difficulty and *she <u>can</u> ambulate on the heels*." R. 407 (emphasis added).

does not use a cane or crutches and "can ambulate on her toes with moderate difficulty and she can ambulate on the heels." R. 102. Dr. Udomsaph further noted Dr. Bagner's examination findings of "[p]ain on movement in the cervical region. There is no sensory abnormality in the upper extremities. *Pain on movement of the right shoulder*, all movements of the right shoulder done carefully and slowly. *The right shoulder shows a normal range of movement*[;]" "[t]he elbows, forearms, wrists, and fingers show a normal range of movement. The patient can make a fist and can oppose the thumbs. The grips rated as 4/5 bilaterally[;]" "[a]ll movements of the lower back done carefully and slowly. There is *normal flexion, normal extension, and normal lateral flexion to the left and to the right*. There is *no pain* on straight leg raising. *No motor or sensory abnormalities* in the lower extremities[;]" normal range of motion in hips and bilateral knees with no effusion or localized tenderness in bilateral knees; pain on movement in ankles, but they showed a normal range of motion. R. 102 (emphasis added). Dr. Udomsaph confirmed that Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of the symptoms [were] substantiated by the objective medical evidence alone." R. 103. The doctor opined that Plaintiff could occasionally lift and/or carry 20 pounds and could frequently lift and/or carry 10 pounds; she could stand and/or walk (with normal breaks) for a total of "[a]bout 6 hours in an 8 hour workday"; and she could sit (with normal breaks) for "[a]bout 6 hours in an 8 hour workday[.]" R. 104. Asked to explain these exertional limitations, Dr. Udomsaph stated:

> IN DIB claim AOD 07/11/19, DLI 09/30/23 alleges broken tail bone, torn RTC, arm limited ROM and back condition. Review TS MER pain management 5/05/21 Dx: Cervical deg. disc radiculopathy radiculitis treated w/CESI but no PE; current CE MER 5/25/21 she fell into a hole on AOD 7/17/19 fractured coccyx, contusion to spinal neck/back, Rt shoulder and Rt knee secondary to sprain/strain. She is able to ambulate on heels/toes w/intermittent Rt limp, pain w/spinal movement wihtout [sic] significant limitations but decreased cervical ROM, hands functional w/weak *grip/pinch strength 4/5* b/l; *shoulder full ROM*; *LE strength 5/5*.

*Id*. (emphasis added). Dr. Udomsaph also opined that Plaintiff had "Limited Right" ability to

reach in front and/or laterally and to reach overhead, but she had unlimited ability to handle, finger, and feel. *Id*. In explaining these findings, the doctor stated that Plaintiff's "Rt shoulder painful ROM but full, to limit overhead reaching 'frequently.' " *Id*. Dr. Udomsaph noted that Plaintiff's past relevant work included hair and nails/cosmetologist, a light exertional job, in which she cut, colored, and styled hair and performed facials, manicures, and pedicures. R. 105. According to Dr. Udomsaph, Plaintiff could perform her past relevant work as she actually performed the work and he therefore concluded that she was not disabled. *Id*.; *see also id*. ("Clmt MDI w/MER statement mentioned above, her current functional capacity is, in my judgment, consistent w/this proposed RFC.").

Arthur Pirone, M.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on October 26, 2021. R. 108–13. In considering the medical record, Dr. Pirone specifically noted that Dr. Bagner's consultative examination in May 2021 revealed, *inter alia*, "cervical *normal* flexion, extension 0, left & right lateral rotation 30, left & right lateral flexion 15. left shoulder *normal ROM. pain on movement of right shoulder normal ROM*. elbows, forearms, wrists, fingers *normal ROM. can make a fist and oppose thumbs. Grips 4/5 bilaterally*[;]" "back pain on movement, *normal* flexion, extension, lateral flexion bilaterally. *no pain SLR*. knee & ankle reflexes 2+ bilaterally. *no motor or sensory abnormalities lower extremities*[;]" and normal range of motion in hips and bilateral knees and ankles. R. 109 (emphasis added). Dr. Pirone agreed that Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of the symptoms [were] substantiated by the objective medical evidence alone." R. 110. Dr. Pirone also agreed with Dr. Udomsaph that Plaintiff could occasionally lift and/or carry 20 pounds and could frequently lift and/or carry 10 pounds; could stand and/or walk (with normal breaks) for a total of "[a]bout 6 hours in an 8 hour workday"; and

could sit (with normal breaks) for "[a]bout 6 hours in an 8 hour workday[,]" and provided the same explanation as was provided by Dr. Udomsaph. R. 110–11. Both doctors agreed that Plaintiff had "Limited Right" ability to reach in front and/or laterally and to reach overhead, but she had unlimited ability to handle, finger, and feel. R. 111. Dr. Pirone concluded: "Clmt MDI w/MER statement mentioned above, her current functional capacity is, in my judgment, consistent w/this proposed RFC. MER reviewed. Limitations assessed on the initial level are deemed to be appropriate and are reaffirmed as written." *Id*. According to Dr. Pirone, Plaintiff could perform her past relevant work of hair and nails/cosmetologist as she actually performed that work and the doctor therefore concluded that Plaintiff was not disabled. R. 112; *see also* R. 109 ("RECON AFFIRMATION. This case has resulted in a Step 4 DENIAL. The RFC permits the performance of PRW per the claimant's description.").

## V.    DISCUSSION

### A.    RFC, Opinion Evidence, and Subjective Statements

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly consider the opinions of the state agency reviewing consultants, erred in considering Plaintiff's subjective statements, and failed in his duty to develop the record. *Memorandum of Law,* ECF No. 8, pp. 15–22; *Plaintiff's Reply*, ECF No. 14, pp. 1–4. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations

omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the present case, he ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that she is limited to no more than occasionally pushing and/or pulling with the bilateral upper extremities; never operating foot controls bilaterally; no more than occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; no more than occasionally stooping, crouching, or kneeling; never crawling; never balancing on narrow, slippery, or erratically-moving surfaces; never tolerating any exposure to heavy industrial machinery, unprotected heights, vibrations, loud noises, or driving vehicles; no more than occasionally reaching overhead bilaterally; no more than frequently reaching in all other directions bilaterally; and no more than frequently handling, fingering, and feeling; and must be permitted ready access to a bathroom three times a day for three minutes at a time, in addition to regular breaks.

R. 24. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, Plaintiff's report that she had fallen through a grate on July 10, 2019, resulting in injury to her spine and extremities; a November 2019 magnetic resonance imaging ("MRI") study of Plaintiff's cervical spine that showed mild C4-C5, C5-C6, and C6-C7 spinal stenosis secondary to posterior vertebral body spurring and right C4-C5 and bilateral C5-C6 and C6-C7

degenerative intervertebral foraminal stenosis; an MRI study of the right shoulder that showed a small high-grade partial-thickness tear of the supraspinatus near its attachment at the greater tuberosity; a lack of orthopedic treatment records until June 2020, when Plaintiff presented to an orthopedic surgeon with complaints of right shoulder numbness and tingling in her right hand; orthopedic examination findings of positive Tinel's sign at the cubital tunnel of the right upper extremity and decreased grip strength on the right hand compared to the left; a July 2020 orthopedic examination that in revealed, *inter alia*, diffuse tenderness to palpation about the right upper extremity and shoulder, thoracic spine, lumbar spine, and right knee; full 5/5 motor strength of the supraspinatus, infraspinatus, and subscapularis; normal neurologic examinations; electromyography ("EMG") study of the right upper extremity that showed no sign of carpal tunnel syndrome; a MRI study of the right knee that showed an oblique tear of the posterior horn and body of the medial meniscus; Plaintiff's report that she had participated in physical therapy for her right shoulder without relief and that she used homeopathic treatments such as CBD oil because she disliked prescription medication; Plaintiff's report during chiropractic care in August 2020 of 10/10 pain of the cervical spine radiating to her right upper extremity and 10/10 right hand and right knee pain; examinations that showed limited range of motion, muscle spasms, and subluxations at multiple levels, although Plaintiff's gait and station were within normal limits; a January 2021 Decadron injection to the cervical spine and subsequent development of bilateral ankle swelling and left ankle pain; Plaintiff's complaint of tingling and paresthesia of both feet and ankles; her provider's notation that Plaintiff's ankles appeared swollen and prescription of gabapentin for peripheral neuropathic pain, although Plaintiff did not take that prescribed medication; Plaintiff's report to a physiatrist in early 2021 of only mild improvement following a C7-T1 interlaminar epidural steroid injection; a MRI study of

Plaintiff's cervical spine that showed multilevel disc disease with slight cord compression at C5-C6; a MRI study of Plaintiff's thoracic spine that showed small central/right paracentral disc herniation at T6-T7 without evidence of cord compression; Plaintiff's report of neck and back pain, arthralgias, and myalgias; Plaintiff's report in late February 2021 that her average pain level was 5/10 and an examination showed tenderness and decreased range of motion of the cervical spine, but full motor strength throughout the upperextremities; an April 2021 cervical interlaminar epidural injection at C7-T1, following which Plaintiff reported moderate (30-60%) improvement and indicated that her average pain level had reduced to 3/10; Plaintiff's statement that her pain was aggravated by movement and improved with ibuprofen and ice and the notation that she appeared to have made moderate improvement with her cervical discomfort and that her main discomfort was in the right midthoracic region; a May 2021 right T6 transforaminal epidural corticosteroid injection; Dr. Bagner's May 2021 consultative examination that revealed, *inter alia*, that Plaintiff could ambulate on her heels and had moderate difficulty ambulating on her toes, that her cervical spine showed normal flexion with extension at 0, that she had no sensory abnormality in the upper extremities but had pain on movement of the right shoulder with all movements done carefully and slowly, but that she exhibited a normal range of motion, and that her range of motion of the elbows, forearms, wrists, and fingers were also normal, that she could make a fist and oppose her thumbs, that her grip strength was 4/5 bilaterally, that she performed all movements of the lower back carefully and slowly but had normal range of motion, that she had no pain with straight leg raising, that she had no motor or sensory abnormalities in the lower extremities, and that she had pain on movement of the right knee a normal range of motion with no knee effusion or localized tenderness. R. 24–26.

The ALJ also noted that Plaintiff had been diagnosed with short bowel syndrome and that she suffered from childhood intestinal gangrene, status post colectomy, and testified that she made 8 to 10 bathroom trips per day; that treatment records from 2021 reflected reports of pelvic discomfort and chronic diarrhea; that Plaintiff had also been diagnosed with and treated for hypothyroidism secondary to thyroidectomy following a history of thyroid cancer; and that Plaintiff was obese. R. 26–27.

The ALJ went on to conclude as follows:

> In sum, the above residual functional capacity assessment is supported by the longitudinal objective medical evidence, which reflects physical impairments that, while limiting, did not rise to the level of disabling functional deficits. The undersigned has carefully accommodated the combined effects of the claimant's cervical spine and thoracic spine impairments, coccydynia, right shoulder tear, torn right knee meniscus, peripheral neuropathy, hypothyroidism, and obesity by restricting her to an eroded range of light exertion with postural limitations and no exposure to workplace hazards. The undersigned has limited the claimant to occasional overhead reaching and frequent reaching in other directions, handling, fingering, and feeling based on her right shoulder tear and cervical radiculopathy with reduced grip strength. The undersigned has also considered the claimant's short bowel syndrome, which causes the claimant to require numerous bathroom visits over the course of a day. However, the undersigned has had this impairment since childhood and was able to tolerate substantial gainful activity for many years despite her symptoms. The claimant's short bowel syndrome is accommodated by allowing her ready access to a bathroom three times a day for three minutes at a time.

R. 28. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554.

Plaintiff, however, raises several challenges to the ALJ's determination. Plaintiff first contends that the ALJ's specification that Plaintiff be allowed access to a bathroom three times a day for 3 minutes at a time were not supported by the record: "These bathroom spans of time were not testified to by Plaintiff, nor were there any examining or treating sources who recommended these options. They came directly from the ALJ, who is a lay individual" and

16

"[t]he ALJ engaged in speculation and medical judgments of his own, which he is unqualified to do." *Memorandum of Law,* ECF No. 8, p. 15 (citing R. 28). This Court disagrees. As previously discussed, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). Accordingly, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Accordingly, "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362. Notably, Plaintiff has not explained why the ALJ's accommodation of three bathroom breaks—in addition to regular breaks—is insufficient nor has she identified any additional or different limitations in this area that the ALJ should have included in the RFC. *See generally Memorandum of Law,* ECF No. 8; *Plaintiff's Reply*, ECF No. 14; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff next takes issue with the ALJ's consideration of the state agency reviewing consultants' opinions. *Memorandum of Law,* ECF No. 8, pp. 16–22; *Plaintiff's Reply*, ECF No. 14, pp. 3–4. The ALJ found that these opinions were persuasive, reasoning as follows:

> In June 2021, medical consultant Joseph Udomsaph, M.D. found that the claimant was limited to an eroded range of light exertion with postural limitations and a restriction to frequently reaching on the right (Exhibit B4A at 3-5). In October 2021, medical consultant Arthur Pirone, M.D. affirmed Dr. Udomsaph's findings on reconsideration (Exhibit B6A at 3-5). The undersigned notes that although Drs. Udomsaph and Pirone did not have an opportunity to examine the claimant, they were familiar with our disability program and based their findings on a review of the medical evidence. *They noted that the claimant has painful, but full range of motion of the right shoulder.* They also acknowledged examination findings that the claimant could ambulate on heels and toes with intermittent right limp and had decreased cervical range of motion and reduced grip strength bilaterally. These findings are generally consistent with and supported by the medical evidence of record, which reflects that the claimant endorsed hyperesthesias [sic] while examination findings were relatively mild to moderate. Moreover, the claimant declined prescription medications in favor of homeopathic treatments (Exhibit B3E at 8; Exhibit B5F at 52, 77; Exhibit B6F at 85). The undersigned finds these prior administrative medical findings persuasive,[6] but has given the claimant the benefit

---

[6] Plaintiff's claim was filed on March 11, 2021. For claims filed after March 27, 2017, the applicable regulation eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). The regulation emphasiz that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive

of every doubt and identified greater restrictions in the assigned residual functional capacity.

R. 28 (emphasis added).

Plaintiff points to the state agency reviewing consultants' finding that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms "are substantiated by the objective medical evidence alone[.]" *Memorandum of Law,* ECF No. 8, p. 16 (citing R. 103) (internal quotation marks omitted); *see also Plaintiff's Reply*, ECF No. 14, p. 3 (citing 103–11). Plaintiff contends that, in light of this statement and because the ALJ found those state agency opinions to be persuasive, the ALJ should have found that Plaintiff was disabled. *Id*. at 16–18 (contending, *inter alia*, that "[t]his [state agency finding] alone should have convinced the ALJ to find that Plaintiff is disabled, as she testified under oath that she does not believe there is any job she can do for 8 hours a day" and detailing other subjective testimony); *Plaintiff's Reply*, ECF No. 14, p. 3. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec*., 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec*., 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

---

the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2). The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally,

an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v.

Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported

by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. §

416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 27–28. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support his findings. R. 24–28. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 27. The ALJ specifically explained how the medical record undermined Plaintiff's statements:

> The claimant has shown improvement with conservative treatment. The record does not document orthopedic treatment from the time of the claimant's fall injury in July 2019 until she presented to Dr. Reicher in June 2020. Although she reported 10/10 pain to her cervical spine, right hand, and right knee, she attained significant relief with epidural steroid injections in January and April 2021. By late April 2021, she reported average pain at only 3/10 (Exhibit B2F at 12). At that time, the claimant's physiatrist paused treatment of the claimant's cervical spine in favor of treating her T6-T7 disc herniation (Exhibit B2F at 16). The claimant generally relies on ibuprofen and homeopathic treatments to address her symptoms. She reported that she did not take gabapentin prescribed by her internist because she was afraid to take it (Exhibit B3E at 8; Exhibit B6F at 85). The undersigned notes that the record shows that the claimant was uncooperative with examinations at times, which she attributed to the severity of her pain (see, e.g., Exhibit B5F at 82, 85).

R. 27–28. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. 20 C.F.R. § 404.1529(c)(3)(v); *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286; *Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372, 375 (3d Cir. 2009) ("an ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason")

(citing SSR 96–7p);[7] *Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the

claimant's conservative treatment history following surgery as a factor that supported the ALJ's

determination to discount the claimant's subjective complaints); *Van Horn*, 717 F.2d at 873;

*Brown v. Comm'r of Soc. Sec.*, No. 4:20-CV-2300, 2022 WL 4080773, at *7 (M.D. Pa. Sept. 6,

2022) ("Conservative treatment can be used as a factor in evaluating medical opinion evidence.")

(citing 20 C.F.R. § 416.920c (c)(3)(iv)).

Moreover, Plaintiff's reliance on the state agency consultants' statements that objective

evidence supported Plaintiff's statements about the intensity, persistence, and limiting effect of

her impairments misses the mark. It is the ALJ—not the state agency consultants or other

sources—who is responsible for evaluating a claimant's subjective statements and the ALJ's

evaluation is entitled to great deference. SSR 16-3p; 20 C.F.R. § 404.1529(a); *Zirnsak*, 777 F.3d

at 612 ("[T]his Court defers to the ALJ's assessment of credibility."); *Malloy v. Comm'r of Soc.

Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's

testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van

Horn*, 717 F.2d at 873); *Izzo*, 186 F. App'x at 286 ("[A] reviewing court typically defers to an

ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to

discredit a witness.") (citations omitted); *Alejandra D. v. Comm'r of Soc. Sec.*, No. CV 22-175,

2023 WL 2609134, at *7 (D.N.J. Mar. 22, 2023) ("The SSA assigns to the Commissioner the

---

[7] "SSR 96-7p, has since been superseded by SSR 16-3p. . . . A comparison of these rulings reveals that there are few substantive changes. Both outline a two-step process to evaluate a claimant's subjective statements, and identify the same factors to be considered in the ALJ's assessment of the intensity, persistence, and limiting effects of a claimant's symptoms." *Barker v. Colvin*, No. 1:15-CV-574, 2016 WL 4408997, at *9 n.3 (M.D. Pa. July 27, 2016) (noting further that "[b]ecause the ALJ and the parties cite to SSR 96-7p, we rely on this ruling as well. However, this analysis would not be different under the new ruling"), *report and recommendation adopted*, No. 1:15-CV-574, 2016 WL 4366952 (M.D. Pa. Aug. 16, 2016).

function of appraising the credibility of witnesses, and accordingly, the ALJ, as the fact finder, has the sole responsibility to weigh a claimant's complaints about her symptoms against the record as a whole.") (citations omitted). The Court has already explained above that the ALJ's discussion provides substantial support for his finding that Plaintiff's subjective statements were not entirely consistent with the record evidence. Accordingly, "[t]he fact that the ALJ found Plaintiff's subjective reports to be not wholly supported by the evidence does not create an inconsistency with the state agency sources' opinions that [he] was required to explain; the fact that the ALJ found those sources' assessment of functional restrictions to be persuasive does not mean [he] was required to agree with or adopt every statement or finding made by those sources in their reports." *Joshua L. T. v. Comm'r of Soc. Sec.*, No. 5:23-CV-0082, 2024 WL 308521, at *6 (N.D.N.Y. Jan. 26, 2024); *cf. Ratkos v. Comm'r of Soc. Sec.*, No. 1:23-CV-00459-SLC, 2024 WL 4432617, at *9 (N.D. Ind. Oct. 4, 2024) (explaining that "district courts that have considered similar arguments"— *i.e.,* that the ALJ's failure to expressly acknowledge or evaluate a prior administrative finding that the claimant's statements are substantiated by objective medical evidence requires remand—"have rejected them") (collecting cases). Significantly, notwithstanding their statements that objective evidence supported Plaintiff's subjective allegations, the state agency reviewing consultants ultimately found Plaintiff capable of performing her past relevant light exertional work and was therefore not disabled. R. 105, 112; *see also Ratkos*, 2024 WL 4432617, at *9 (concluding that the ALJ's failure to explicitly discuss state agency finding that the claimant's allegations were substantiated by objective evidence did not require remand where those consultants both concluded that the claimant "had the RFC to perform a reduced range of light work"); *Chris R. v. Comm'r of Soc. Sec.*, No. 3:23-CV-49, 2023 WL 8069424, at *6 (S.D. Ohio Nov. 21, 2023), *report and recommendation adopted sub nom.*

23

*Ronald R. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-49, 2024 WL 1049968 (S.D. Ohio Mar. 11, 2024) ("Even though the doctors found Plaintiff's descriptions of his symptoms to be consistent with the medical evidence, they also found Plaintiff was not disabled and capable of light work."). Notably, the ALJ went on to include even greater restrictions in the RFC—to Plaintiff's benefit—than those found by the state agency reviewing consultants. R. 24, 27. Based on this record, the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints; the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy*, 306 F. App'x at 765 (citations omitted).

Plaintiff goes on to argue that the State agency consultants, "both of whom found that the record supported Plaintiff's complaints that she is unable to perform 8 hours of any kind of work, yet still opined that she can perform light work, created an inconsistency that the ALJ was duty-bound to clarify." *Memorandum of Law,* ECF No. 8, p. 18; *see also Plaintiff's Reply*, ECF No. 14, pp. 3–4 ("The opinions of Dr. Udomsaph and Dr. Pirone clearly created inconsistencies when they found that Plaintiff's complaints of inability to work were supported by the record but still opined that she could perform light work."). Plaintiff therefore contends that the opinions in this regard were "neither supportable nor consistent with the medical findings of record" and that the ALJ failed in his duty to develop the record when he did not clarify this inconsistency with the state agency reviewing consultants. *Memorandum of Law,* ECF No. 8, pp. 18–20; *see also Plaintiff's Reply*, ECF No. 14, pp. 3–4. This Court disagrees.

As detailed above, in finding the state agency opinions persuasive, the ALJ specifically noted that these consultants considered objective medical evidence in their evaluations, including, *inter alia*, that, despite pain, Plaintiff had full range of motion of the right shoulder,

could ambulate on her heels and toes although with an intermittent right limp, and had decreased range of motion of the cervical spine and reduced grip strength bilaterally. R. 27. The ALJ went on to explain why the state agency opinions were supported by and consistent with the record, including "examination findings [that] were relatively mild to moderate" and the fact that Plaintiff "declined prescription medications in favor of homeopathic treatments[.]" *Id*.; *see also* R. 26 (noting Dr. Bagner's examination findings, which included, *inter alia*, normal range of motion of the elbows, forearms, wrists, and fingers; finding that Plaintiff could make a fist and oppose her thumbs and her grip strength was 4/5 bilaterally; normal range of motion of her lower back; no pain on straight leg raising; no motor or sensory abnormalities in the lower extremities; and despite pain on movement of right knee, there was normal range of motion with no knee effusion or localized tenderness). The Court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. § 404.1520c(c)(1), (2); *Koletar v. Kijakazi*, No. 1:21-CV-994, 2022 WL 3598090, at *13 (M.D. Pa. Aug. 23, 2022) (concluding that substantial evidence supported the ALJ's finding a medical opinion not persuasive because "the examination findings of the longitudinal record are not consistent with these rather extreme limitations," and the ALJ summarized medical evidence, including physical examinations that revealed, *inter alia*, stable gait, normal muscle tone, intact sensation, and normal reflexes except the plantar reflexes that were zero) (internal quotation marks omitted); *cf. Vega*, 358 F. App'x at 375; *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings).

To the extent that Plaintiff argues that the state agency reviewing consultants' acknowledgement of Plaintiff's pain upon certain movement undermines or conflicts with their finding that Plaintiff could perform light exertional work with the ability to perform, *inter alia*, frequent overhead reaching and no limitation on handling, fingering, or feeling, this Court disagrees. Evidence of some pain and discomfort does not necessarily establish disability. *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986) ("[W]hile Welch's pain may be constant and uncomfortable, it is not disabling or severe."); *see also Null v. Saul*, No. CV 2:18-759, 2019 WL 2867201, at *3 (W.D. Pa. July 3, 2019) ("It is well-established, however, that a claimant need not be pain free or symptom free to be found not disabled. Rather, the claimant must still show he is unable to perform substantial gainful activity. . . . As set forth above, the ALJ here did not disagree that Plaintiff experiences significant, and sometimes increasing, pain; he found, however, that the pain was sufficiently controlled with medication and other treatment to permit Plaintiff to perform some substantial gainful activity.") (internal citations omitted); *McIntyre v. Berryhill*, No. CV 17-2176, 2018 WL 5962476, at *5 (D.N.J. Nov. 13, 2018) ("It must be remembered, however, that to be fit for work, a claimant need not be pain-free or symptom-free.") (citing *Welch*, 808 F.2d at 270); *Bennick v. Berryhill*, No. 3:16-CV-2391, 2017 WL 2957870, at *12 (M.D. Pa. July 11, 2017) ("Importantly, the ALJ did not find Plaintiff symptom-free: she noted Plaintiff's testimony about the effectiveness of pain medications and acknowledged her previous and future surgeries related to arthritis. As many decisions in the Third Circuit have noted, a claimant 'need not be pain-free to be found 'not disabled' especially when her work issue requires a lower exertional level.'") (citations omitted). Thus, the opinions of the state agency consultants did not present an inconsistency that the ALJ was "duty-bound to clarify" by following up with these reviewing consultants.

Similarly unavailing is Plaintiff's complaint that, because the record contains no treating opinion, the ALJ was required to further develop the record by contacting medical sources to request opinions regarding Plaintiff's functional limitations. *Memorandum of Law,* ECF No. 8, pp. 20–22; *Plaintiff's Reply*, ECF No. 14, pp. 3–4. Although "ALJs have a duty to develop a full and fair record in social security cases[,]" *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995), "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) ("[T]he ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'") (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). Moreover, when the claimant is represented by counsel, it is the claimant's counsel who is "responsible for ensuring that the ALJ was aware of any facts favorable to [the claimant's] claim for benefits." *Turby v. Barnhart*, 54 F. App'x 118, 122 (3d Cir. 2002). Relatedly, "the ALJ is entitled to assume that the claimant is making the strongest case possible for benefits" when counsel represents the claimant at the administrative level. *Myers v. Berryhill*, 373 F. Supp. 3d 528, 539 (M.D. Pa. 2019).

In addition, an ALJ has the discretion, but not the duty, to recontact a medical source. Specifically, "[i]f the evidence is consistent but [the ALJ has] insufficient evidence to determine whether [the claimant is] disabled, or if after considering the evidence [the ALJ] determines [he] cannot reach a conclusion about whether [the claimant is] disabled . . . [the ALJ] *may* recontact your medical source." 20 C.F.R. § 404.1520b(b)(2)(i) (emphasis added). If "there was sufficient evidence in the medical records for the ALJ to make [his] decision[,]" the ALJ need not

recontact a treating source. *Moody v. Barnhart*, 114 F. App'x 495, 501 (3d Cir. 2004); *see also*

*Gladden o/b/o Hyman-Self v. Berryhill*, No. CV 17-1832, 2018 WL 1123763, at *6 (E.D. Pa.

Feb. 28, 2018) ("There is no obligation to recontact a medical source when the ALJ finds that the

record as a whole provides an adequate basis to determine whether the claimant is disabled.").

In the present case, Plaintiff's counsel represented at the administrative hearing that the

record was complete. R. 38, 180-83. Although Plaintiff now insists that the ALJ should have

developed the record by recontacting various treating providers, Plaintiff made no such request

of the ALJ. Under these circumstances, the ALJ was entitled to assume that Plaintiff had made

the strongest possible case for benefits. *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95

(3d Cir. 2004) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) for the

proposition that an ALJ "is entitled to rely not only on what the record says, but also on what it

does not say").

Moreover, Plaintiff has not persuaded the Court that the record was so deficient as to

prevent the ALJ from assessing Plaintiff's physical limitations simply because there were no

treating opinions addressing her functional limitations. As this Court has already explained, the

"ALJ—not treating or examining physicians or State agency consultants—must make the

ultimate disability and RFC determinations[,]" *Chandler*, 667 F.3d at 361 (citations omitted), and

 "[t]here is no legal requirement that a physician have made the particular findings that an ALJ

adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d

Cir. 2006); *see also* 20 C.F.R. § 404.1546(c); *Mays*, 78 F. App'x at 813. Therefore, "the ALJ is

not precluded from reaching RFC determinations without outside medical expert review of each

fact incorporated into the decision." *Chandler*, 667 F.3d at 362.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the state agency reviewing consultants' opinions.

### B.    Past Relevant Work

Plaintiff also challenges the ALJ's conclusion that Plaintiff could perform her past relevant light work as a pharmacy cashier as actually and generally performed. *Memorandum of Law,* ECF No. 8, pp. 22–24; *Plaintiff's Reply*, ECF No. 14, pp. 4–7. Plaintiff specifically argues that the description of this job in the Dictionary of Occupational Titles ("DOT") [8] is outdated and she appears to argue that the particular job description in the Occupational Outlook Handbook ("OOH"), which incorporates O*Net, which is a more recent source of job information, conflicts with the ALJ's RFC. *Memorandum of Law,* ECF No. 8, pp. 22–24. Plaintiff also insists that the evidence actually establishes that she cannot perform her past relevant work as a pharmacy cashier. *Plaintiff's Reply*, ECF No. 14, pp. 4–7. For the reasons that follow, Plaintiff's arguments are not well taken.

A vocational expert testified at the administrative hearing. R. 58–74. That expert identified Plaintiff's past relevant work as a cosmetologist (DOT 332.271-010, light exertion, SVP[9] 6) and pharmacy clerk (DOT 290.477-014, light exertion, SVP 3). R. 60, 66. The

---

[8] The Dictionary of Occupational Titles or "DOT" is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).
[9] "The DOT lists a specific vocational preparation (SVP) time for each described occupation." *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 3562691, at *7 n.8 (D.N.J. Aug. 6, 2019). "'SVP' refers to the amount of time required by a typical worker to learn how to perform a specific job." *Jones v. Astrue*, 570 F. Supp. 2d 708, 716 n.5 (E.D. Pa. 2007), *aff'd sub nom. Jones v. Comm'r of Soc. Sec.*, 275 F. App'x 166 (3d Cir. 2008). "Using the skill level definitions in 20 C.F.R. § 404.1568, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an

vocational expert testified that an individual capable of, *inter alia*, occasional bilateral overhead reaching would not be able to perform the job of cosmetologist, which requires frequent overhead reaching. R. 69–71. However, the vocational expert also testified that such an individual could perform the job of pharmacy clerk, as actually performed by Plaintiff and as generally performed, because it requires, *inter alia*, only occasional overhead reaching. R. 71–72. The vocational expert went on to state that her testimony regarding overhead reaching is based on her knowledge and skill as a vocational expert, not on the DOT. R. 72–73.

In his decision, the ALJ found at step four that Plaintiff was capable of performing her past relevant work as a pharmacy cashier, explaining as follows:

> In comparing the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work as a pharmacy cashier, the undersigned finds that the claimant is able to perform it as actually and generally performed. The vocational expert, in response to the undersigned's question that accurately reflected the assigned residual functional capacity,[10] compared the requirements of the pharmacy cashier position to the claimant's restrictions and found that the claimant was capable of this job in both actual and general performance. After a review of the evidence and a comparison between the functioning of the claimant and the requirements of the position, the undersigned

---

SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *Thomas*, 2019 WL 3562691, at *7 n.8.

[10] The relevant hypothetical question posed to the vocational expert included the RFC for, *inter alia*, medium exertional work with additional limitations. R. 69–70. As detailed above, however, the ALJ ultimately found that Plaintiff had the RFC for a limited range of light work. R. 24. At step four, the ALJ noted this difference in exertional limitations in the hypothetical and the RFC, which he explained:

> The undersigned acknowledges that the hypothetical to the vocational expert specified an eroded range of medium exertion and the assigned residual functional capacity is for an eroded range of light exertion. However, the claimant's past relevant work as a pharmacy cashier was performed, both generally in the national economy and actually by the claimant, at the light exertional level. The undersigned finds that this deviation from the vocational expert hypothetical does not impact her conclusion that the light past relevant work is feasible.

R. 29. Neither party challenged the ALJ's explanation in this regard.

concurs with the vocational expert and so finds that the claimant can perform this past relevant work as actually and generally performed.

R. 28.

In challenging this conclusion, Plaintiff contends that the Department of Labor replaced the DOT, which is outdated, with O*Net (which the OOH incorporates) and argues that the ALJ's reliance on the DOT was error. *Memorandum of Law*, ECF No. 8, pp. 21–24.[11] This Court disagrees.

"[T]he Code of Federal Regulations specifically lists the DOT as a source of 'reliable job information[.]'" *Hearn v. Comm'r of Soc. Sec.*, No. CV 18-10538, 2019 WL 2710790, at *7 (D.N.J. June 27, 2019) (quoting 20 C.F.R. § 404.1566(d)). "Although Plaintiff may disagree with the relevance of the Dictionary of Occupational Titles ("DOT") in the modern-day work force, 'the DOT remains an appropriate source of occupational data.'" *Sanabria v. Comm'r of Soc. Sec.*, No. 2:15-CV-8963, 2017 WL 436253, at *4 (D.N.J. Jan. 31, 2017) (quoting *Coates v. Colvin*, No. CIVA. 14-0265, 2014 WL 4792199, at *4 (W.D. Pa. Sept. 24, 2014)); *see also Rush v. Berryhill*, Civ. No. 17-939, 2018 WL 4257930, at *1 n.1 (W.D. Pa. Sept. 6, 2018) ("[C]ourts in the Third Circuit that have addressed the matter have continued to find the DOT to be an appropriate source of occupational information and have declined to require ALJs and VEs to consult other sources in addition to the DOT.") (citations omitted); *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 1:16-CV-05691-NLH, 2017 WL 4316880, at *9 (D.N.J. Sept. 28, 2017) ("It is not

---

[11] In advancing this challenge, Plaintiff also cites to "admittedly a case from another jurisdiction and therefore not binding on this Court," "*Czosnowski v. Commissioner, Social Security*, Civil Case No. RDB-13-1467[.]" *Id*. at 23. However, Plaintiff provides no citation for this case either in the text of her opening brief or in its Table of Authorities. *Id*. at 23. Plaintiff bears the burden of proof at step four and the Court will not attempt to hunt down a case that Plaintiff concedes is not binding on this Court.

for this Court to reform the methodology that SSA VEs use to determine available and appropriate jobs in the national economy that match a claimant's RFC.").

To the extent that Plaintiff insists that O*Net replaced the DOT, *Memorandum of Law*, ECF No. 8, p. 24, this Court again disagrees. The SSA has specifically found that O*Net is not a sufficient substitute for the DOT:

> **Why are you developing a new occupational information system (OIS)? Why can't the Department of Labor (DOL) update the Dictionary of Occupational Tiles (DOT), or why can't you use the Occupational Information Network (O*NET)?**
>
> The Department of Labor (DOL) developed the DOT in the late 1930s to match jobseekers to jobs. For almost 50 years, the DOT has been our primary source for occupational information. The DOL discontinued updating the DOT in 1991 and replaced it in 1998 with another job placement tool, the Occupational Information Network (O*NET). *We studied whether O*NET could take the DOT's place in our disability adjudication process but found it does not describe the physical requirements of occupations at the level of detail needed for claims adjudication.*

https://www.ssa.gov/disabilityresearch/occupational_info_systems.html (last visited 7/3/25) (emphasis by italics added).

It follows that Plaintiff's contention that the ALJ should have resolved a conflict between the RFC and O*Net / OOH is unavailing. *Memorandum of Law*, ECF No. 8, pp. 23–24. "As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT [Dictionary of Occupational Titles]." *Zirnsak*, 777 F.3d at 617 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). Before relying on the testimony of the vocational expert, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the Dictionary of Occupational Titles[.]" SSR 00-4p, 2000 WL 1898704, at *1. Notably, "nothing requires ALJ's to resolve such conflicts [with O*Net] because the DOT— not O*Net—is the authoritative source in this area." *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483,

496 n.4 (D.N.J. 2022) (citing *Everingham v. Comm'r of Soc. Sec.*, No. 17-12249, 2018 WL

6322620, at *9 (D.N.J. Dec. 18, 2018) (rejecting similar arguments regarding another third-party

online resource)); SSR 00-4p (advising that, before relying on vocational expert testimony,

adjudicators must "[i]dentify and obtain a reasonable explanation for *any conflicts between*

*occupational evidence provided by VEs or VSs and information in the Dictionary of*

*Occupational Titles (DOT)*, including its companion publication, the Selected Characteristics of

Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)" and explain how

any identified conflict was resolved) (emphasis added); *Nicky N. v. Comm'r of Soc. Sec.*, No. CV

23-3440 (SDW), 2024 WL 1526122, at *8 (D.N.J. Apr. 9, 2024) ("Plaintiff's reliance on

'O*NET' is misplaced. *ALJs and VEs may rely on the DOT data even where it conflicts with*

*O*NET*, . . . and that is what the ALJ did here.") (citations omitted) (emphasis added); *Evans v.*

*Comm'r of Soc. Sec.*, No. 4:21-CV-00841, 2022 WL 4357470, at *10 (M.D. Pa. Sept. 20, 2022)

("Here, it seems Plaintiff is conflating the DOT with O*NET and the Occupational Requirements

Survey. In other words, Plaintiff is confusing the requirement that the ALJ ask the vocational

expert to reasonably explain the ways the VE's testimony conflicts with the DOT with a

requirement that the ALJ ask the vocational expert to explain all conflicts in the VE's testimony,

which is not a requirement in the Third Circuit.") (citations omitted); *Junod v. Berryhill*, No. CV

17-1498, 2018 WL 5792214, at *3–5 (W.D. Pa. Nov. 5, 2018) ("'Thus, even if the VE's

testimony was in conflict with O*NET, . . . there is no requirement that the VE's testimony

comply with that database.'") (quoting *Malfer v. Colvin*, Civ. No. 12-169J, 2013 WL 5375775, at

*5(W.D. Pa. Sept. 24, 2013)). This Court has rejected similar challenges based on conflicts with

the OOH. *See Anna C. v. Kijakazi*, No. CV 21-16975 (CPO), 2022 WL 3500434, at *6–7 (D.N.J.

Aug. 18, 2022) (rejecting the claimant's argument that the ALJ was "bound by" the OOH and

finding that the DOT remained a reliable source of job information upon which the ALJ reasonably relied) (citations omitted).

In the present case, the vocational expert testified that her testimony was consistent with the DOT and, to the extent that she discussed absenteeism, ready access to a bathroom, and overhead reaching, she testified that her testimony was based on her experience and skill as a vocational expert. R. 72–73. Under these circumstances, Plaintiff has not persuaded the Court that the ALJ's reliance on the DOT or any alleged conflict between the RFC / vocational testimony and O*Net / OOH requires remand. *See Zirnsak*, 777 F.3d at 617 ("As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT."); *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189–90 (3d Cir. 2007) (finding the ALJ did not err in relying on a vocational expert who based his opinion on thirty years of his experience).

Finally, to the extent that Plaintiff insists that the record evidence establishes that she is unable to perform her past relevant work, *Plaintiff's Reply*, ECF No. 14, pp. 4–7, her contention boils down to simply a disagreement with the ALJ—whose duty it is to craft the RFC and whose decision the Court has already found is supported by substantial evidence. *See Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted); *Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("With regard to their impact on the RFC determination even when those impairments are considered not severe, Plaintiff does not articulate what additional restrictions should have

been implemented. It is Plaintiff's burden to establish the severity of her impairments, and Plaintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than showing any substantive error."). The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose her—or this Court's—own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 7, 2025                                    *s/Norah McCann King*
                                                                   NORAH McCANN KING
                                                      UNITED STATES MAGISTRATE JUDGE